UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:20-cr-10136-2-RGS |
| | ) | |
| | ) | |
| WINSTON MCGHEE | ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

I.   **Introduction**

Winton McGhee has fully accepted responsibility and committed himself through a binding plea agreement to recommend a sentence of 115 months. Dkt. 233. His willingness to give up nine years and seven months of his life demonstrates his acceptance of responsibility and acknowledges the harm of his crimes. That period of incarceration, to be followed by six years of supervised release, is at the high end of the advisory guidelines range as calculated in the plea agreement. Id. This court should accept the plea agreement and impose the jointly recommended sentence because the length of the sentence, the advisory guidelines, and all the factors discussed below show that it is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a).

II.   **The parties calculated the guidelines correctly in the plea agreement, and the Court should sustain Mr. McGhee's objections to probation's calculations.**

The probation department assessed four enhancements that were not included in the parties' calculation in the plea agreement. Both Mr. McGhee and the government have objected to any

1

enhancements not included in the plea agreement, and the government has advised that it will not seek to prove any of the enhancements by a preponderance of the evidence.

A. <u>There is insufficient evidence to show by a preponderance that Mr. McGhee possessed the Ruger firearm. Thus, because it is not relevant conduct, it should not be included in the offense level calculation and any references to it should be stricken from the Presentence Report</u>.

Three of the four disputed enhancements come from the determination that a Ruger firearm found on a porch on the day Mr. McGhee was arrested on a state warrant is relevant conduct to this separate investigation. PSR ¶¶ 68, 69. Mr. McGhee has never been charged in either federal or state court with the Ruger.

Probation's incorrect determination that the Ruger is relevant conduct to this case results in three enhancements: 1) an enhanced base offense level of 22 because the Ruger included a high capacity feeding device under USSG § 2K2.1(a)(3); 2) four points for obliterated serial number under USSG 2K2.1(b)(4)(B); and 3) four points for possession of a firearm in connection with another felony offense under USSG 2K2.1(b)(6). Id. These enhancements would not apply to the Glock firearm recovered from Mr. McGhee's residence on June 24, 2020, which is the basis of Count Two. The three enhancements applied by probation result in the offense level for Count Two, Felon in Possession of a Firearm, being higher than the offense level for Count One, Conspiracy to Distribute and Possess with Intent to Distribute Cocaine and Cocaine Base, which was the basis of guidelines calculation in the plea agreement. PSR ¶ 66. As a result, the advisory range calculated by probation is 130-162 months, while the parties calculate the range as 92-115 months. PSR ¶ 160.

Probation determined that the Ruger firearm was relevant conduct based on the unsupported conclusion that he "discarded" a firearm when he was arrested on April 27, 2020 on a state warrant for a shooting that had occurred 10 days earlier. PSR ¶¶ 15, 93. In fact, there is no credible evidence to prove by a preponderance that Mr. McGhee possessed the Ruger.

The presentence report alleges that during a brief flight from police on April 27, 2020 that Mr. McGhee discarded both a backpack and a Ruger. PSR ¶ 15. The presentence report also implies that the Ruger and the backpack were found together. Id. In fact, the items were found in separate locations, as shown in a police photograph which shows that the Ruger was found by itself on a porch. Exhibit A.

On May 12, 2020, 16 days after Mr. McGhee was arrested, the state prosecutor submitted a memorandum and exhibits in support of the Commonwealth's Motion for Pretrial Detention. Exhibit B. The exhibits included an original police report and two supplemental reports. Neither the motion, nor any of the three reports, make any mention of a Ruger allegedly found on a porch on the day of Mr. McGhee's state arrest. Id. The Commonwealth's interest at that point was in proving to the state court that Mr. McGhee was dangerous pursuant to Massachusetts' pretrial detention statute. M.G.L. c. 276, § 58A. The complete lack of reference to the Ruger in that contested proceeding reveals that there was no evidence that Mr. McGhee possessed it. Where the Commonwealth did not even allege that Mr. McGhee possessed a firearm on the day of his arrest, the probation department cannot prove by a preponderance that he "discarded" it. PSR ¶ 15. This Court has no evidentiary support by which it can determine that Mr. McGhee possessed the Ruger by a preponderance.

In its response to the defendant's objection on this issue, the probation department asserted that the state case based on the shooting for which Mr. McGhee was arrested on a warrant on April 27, 2020 is "in the initial phase of prosecution." PSR p. 56. Regardless of the status of the case in state court, the *investigation* has existed for well over a year now. There were no fingerprints found on the Ruger. Exhibit C. There is also no assertion or evidence that DNA testing linked the Ruger to Mr. McGhee, or that ballistics testing linked the Ruger to the April 17, 2020 shooting for which Mr. McGhee is charged.

In short, probation's assertions in the presentence report about the Ruger are conclusions which are unsupported by any credible evidence. The presentence report assumes a connection between Mr. McGhee and the Ruger, and also assumes a connection between the Ruger and the April 17, 2020 shooting. However, neither of those assumptions are supported by any credible evidence. Thus, the standard of a preponderance of the evidence has not been met and the three enhancements based on the Ruger should not be applied.

Furthermore, because there is not a preponderance of the evidence that Mr. McGhee possessed the Ruger, it cannot be considered relevant conduct under USSG § 1B1.3. Therefore, any references to the Ruger in the offense conduct should be stricken from the presentence report. If those unsupported assumptions remain in the presentence report, the Bureau of Prisons will include them in their calculation of Mr. McGhee's classification and may assign him to a higher level of security than is properly justified. This would result in a harsher form of punishment than is supported by the record. In order to sentence Mr. McGhee fairly, and to provide accurate information to the BOP, this Court should order that the offense conduct be amended to strike any references to the Ruger.

B. <u>There is insufficient evidence that Mr. McGhee maintained a premises for the purpose of distributing drugs</u>.

In addition to the enhancements to the offense level for the firearm count based on the Ruger discussed above, the probation department also assessed two points to the offense level for the drug conspiracy count for maintaining a premises for the purpose of distribution of drugs under USSG § 2D1.1(b)(12). PSR ¶ 66. This enhancement did not affect probation's calculation of the advisory range because it determined that the offense level for the firearm count is higher and thus controls. Id. However, if the Court were to sustain the objections to the three enhancements to the firearm offense level based on the Ruger, this enhancement to the drug conspiracy offense level would result in a higher range than calculated by the parties. As with the enhancements to the firearm count, the government has indicated that it does not seek to prove the premises enhancement by a preponderance of the evidence.

Probation applied the enhancement based on the unsupported claim that Mr. McGhee used 214 Harvard Street as a stash house. PSR ¶ 66; PSR p. 57. However, the presentence report is completely devoid of any evidence that Mr. McGhee "maintained" that address. There is evidence that two sales involved that address. PSR ¶¶ 32, 47. There is also evidence that cash, marijuana, and ammunition, but not cocaine, were seized from that address. PSR ¶ 61. Two sales, money, and marijuana are not evidence that Mr. McGhee "maintained" that address.

Specifically, this Court should consider the complete lack of evidence that he "maintained" the premises. There is no evidence that he owned or rented that location. There is no evidence that he had a key, had unrestricted access, or was able to restrict the access of others. There is no

evidence of the frequency of his presence there, or whether he kept any personal items there. There is only evidence of two sales and the items discussed above. That Mr. McGhee on two occasions used the premises for drug distribution is simply not the same as maintaining premises for that purpose. The Sentencing Commission chose to craft an enhancement that punished people for "maintaining" premises for drug distribution. That deliberate choice reflects a concern with a longer term investment in a location as a base for criminal activity. There is no such evidence in this case.

In Application Note 17 to USSG § 2D1.1, the Sentencing Commission articulated two factors for the Court to consider in determining whether there is a preponderance of the evidence that a defendant "maintained" a premises for drug distribution: "(A) whether the defendant held a possessory interest in (*e.g.* owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises." There is no evidence of either factor in this case. A naked assertion that it was a "stash house" does not comply with the preponderance of the evidence standard. PSR ¶ 11. This Court should not impose a penalty based on assertions that are completely devoid of evidence.

C. <u>The parties calculated the guidelines correctly in the plea agreement</u>.

For the reasons argued above, the enhancements applied by the probation department to both the drug conspiracy and firearm offense levels are not supported by a preponderance of the evidence. Instead, the correct offense level is the one calculated by the parties in the plea agreement. For Count One, the drug conspiracy count, Mr. McGhee receives: a base offense level of 24 because he is responsible for between 500 grams and two kilograms of cocaine; a two

point increase because he possessed a firearm, based on the Glock recovered from 430 Washington Street at his federal arrest on June 24, 2020, PSR ¶ 61; and a three point decrease for acceptance of responsibility. Dkt. 233, p.2. The parties agree with probation that Mr. McGhee is in Criminal History Category VI. The advisory range for offense level 23 in Category VI is 92-115 months.

The offense level for the firearm count is lower. The correct calculation of the firearm offense level is: base offense level of 20 under USSG § 2K21(a)(4) because Mr. McGhee has a previous conviction for a controlled substance offense; a four point increase for possession in connection with another felony offense, USSG § 2K2.1(b)(6)(B); and a three point reduction for acceptance of responsibility, resulting in an offense level of 21. Because this is lower than the offense level for the drug conspiracy count, the drug conspiracy offense level is used. USSG § 3D1.2(c).

**III.   The Court should strike assertions that Mr. McGhee is a gang member from the Presentence Report because they are not supported by a preponderance of the evidence and Mr. McGhee will receive increased classification points from the Bureau of Prisons based on inaccurate information.**

Mr. McGhee objected to the information in the presentence report that he is a gang member. PSR ¶ 11; PSR p. 55. In support of his objection, Mr. McGhee submitted a 2017 Boston Police report that identified him as an "inactive" gang member. PSR p. 55. In response, the probation department amended the presentence report to note that he was an inactive member of the Codman Square/Millet Street gang, but retained an assertion that he was a high-level associate of

the Wainwright Street gang. Id. However, this conclusion is not supported by any actual evidence.

The defense understands that the government included information about alleged gang membership in the description of the offense conduct simply to describe the background of the investigation, not to make any definitive claims about such membership nor seek to prove it by a preponderance. The probation department has accepted law enforcement's untested assertion without evidence. This Court should not do the same. Law enforcement's claim about active Codman Square/Millet Street membership was disproven by the Boston Police Department's own report. The remaining claim about Wainwright Street membership should thus be viewed with suspicion. Without any actual evidence of gang membership, the Court should order the presentence report to be amended so as to remove the references to gangs.

Although alleged gang membership does not affect the guidelines calculation here, it will affect Mr. McGhee's designation by the BOP. Under BOP Program Statement P5100.08, membership in a "Disruptive Group" will be applied as Public Safety Factor. Exhibit D, Excerpt of BOP Program Statement P5100.08, full text at
https://www.bop.gov/policy/progstat/5100_008cn.pdf, Chapter 5, pp. 7, 12. Under the BOP's calculation, any inmate who receives a Disruptive Group factor will be categorized as High Security, *regardless of the other applicable security points*. Id at p. 12, Table 5-2. This is a serious consequence that will result in a much more restrictive and harsher form of incarceration.

This Court has not been presented with any evidence at all about why the police claim that Mr. McGhee is a gang member. Nor has the Court been presented with any evidence about *when* this claim was made. Judging by the fact that an inactive gang membership was claimed as

8

current, it appears that officers may simply repeat assertions they have heard from other officers. That may be sufficient for an investigation, but this Court has a different role. The claim of gang membership is unsupported by any evidence, is not relevant conduct, and will result in serious consequence for Mr. McGhee. Mr. McGhee thus requests that the Court order that the presentence report be amended to remove the allegations of gang membership.

IV. **The sentencing factors of 18 U.S.C. § 3553(a) show that a sentence of 115 months incarceration and six years of supervised release is sufficient, but not greater than necessary.**

Winston McGhee was arrested on June 24, 2020. A little over six months later he entered into a binding plea agreement and agreed to waive his right to indictment on any superseding counts. He now recommends that this Court sentence him to 115 months incarceration and six years supervised release, which amount to an extremely long combined sentence.

He will leave behind his girlfriend and their infant daughter. PSR ¶¶ 126-127. Mr. McGhee was arrested before his daughter's birth, and due to visiting restrictions imposed during the pandemic, he has tragically never met her in person. PSR ¶ 126. His girlfriend remains supportive despite these incredibly difficult circumstances. PSR ¶ 127. She has moved to North Carolina for family support, and Mr. McGhee hopes to be able to live with his family upon release. Not only will this allow them to be together for the first time, but moving from Boston would allow him to separate from the people and places that have led to poor decisions in the past. In order to better allow for visitation, Mr. McGhee requests a judicial recommendation that he be designated as close as possible to Greensboro.

The length of the sentence takes into account several of the statutory sentencing factors. Through his plea and the plea agreement, Mr. McGhee has fully acknowledged the nature and circumstances of the offense. 18 U.S.C. § 3553(a)(1). A sentence of nine years and 7 months also clearly reflects the seriousness of the offense, promotes respect for the law, provides just punishment, deters criminal conduct, and protects the public. 18 U.S.C. § 3553(a)(2)(A-C). During his lengthy incarceration, Mr. McGhee will have access to educational and vocational training. 18 U.S.C. § 3553(a)(2)(D).

The presentence report provides important information about Mr. McGhee's history and characteristics, 18 U.S.C. § 3553(a)(1), including the difficult circumstances in which he was raised and which led to his early involvement with the courts. His parents separated when he was one year old, and he was thereafter raised by his father. PSR ¶ 107. His mother abused cocaine, and after she separated from his father at times broke into their home. PSR ¶ 116. He only saw his mother occasionally during his childhood. Id. Although Mr. McGhee's father was a provider, as a child he witnessed domestic violence between his father and the woman who was the mother of two of Mr. McGhee's sisters. PSR ¶ 117. With the presence of substance abuse and domestic violence, it is not surprising that Mr. McGhee became involved in DYS at age 16. PSR ¶ 119.

The jointly recommended sentence also takes account of the advisory sentencing guidelines as calculated by the parties, as 115 months is the high end of the range for offense level 23 in Criminal History Category VI. 18 U.S.C. § 3553(a)(4). Even were this Court to adopt the probation department's calculations, the jointly recommended sentence is only slightly below the low end of that range of 130-162 months. PSR ¶ 160.

One factor which is not accounted for by the advisory guidelines is the effect of a year of

incarceration during a global pandemic. For nearly a year, Mr. McGhee has served a form of incarceration that has been qualitatively more severe than designed. Imprisonment in normal circumstances allows inmates to move about within the facility for recreation and programming. Normal circumstances allow for regular visits, both with family and with attorneys. None of that has been possible during the pandemic because the paramount concern behind the walls of a prison has been to maintain as much separation between inmates as possible to slow the spread of the virus. Within the Bureau of Prisons, the pandemic has meant suspending nearly all inmate transfers and restricting inmates to their units or cells for the great majority of each and every day for many months.

The restrictions that penal facilities have put in place to try to slow the spread of the virus make sense. But they also significantly tip the quality of incarceration away from rehabilitation further towards punishment. Mr. McGhee and all other inmates have been deprived of recreation and rehabilitation opportunities. They have generally been confined to their units, and at times to their cell, for extended periods of time. They have also been forced to live with the fear of contracting a potentially fatal disease, without the ability to protect themselves through social distancing. The jointly recommended sentence of 115 months would be sufficient under any circumstances, but is certainly so given the more severe form of incarceration which Mr. McGhee has experienced.

### V.     Conclusion

Winston McGhee accepted responsibility and pled guilty knowing full well that he would be serving the longest sentence of his life by far. He did so without ever having had a chance to hold his infant daughter. The unprecedented circumstances of a global pandemic have made his incarceration more severe. Given these factors, and all the relevant sentencing factors discussed above, this Court should accept the plea agreement and impose the jointly recommended sentence because it is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a).

Respectfully submitted,
WINSTON MCGHEE
by his attorney

*/s/ Joshua Hanye*
Joshua Hanye, BBO#661686
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
Boston, MA 02210
617-223-8061

### Certificate of Service

I, Joshua Hanye, hereby certify that this document was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants.

Date: June 8, 2021                                                          */s/ Joshua Hanye*
                                                                            Joshua Hanye